The People of the State of Illinois, Plaintiff-Appellee, *v.* Jerome Winfield, Defendant-Appellant.

(No. 54408;

First District—May 5, 1971.

Gerald W. Getty, Public Defender, of Chicago, (Harold A. Cowen, Norman W. Fishman, and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle, Richard E. Neville, and James R. Kavanaugh, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE BURMAN delivered the opinion of the court:

The defendant, Jerome Winfield, was indicted on charges of attempt murder and aggravated battery. After a jury trial, he was convicted of aggravated battery and sentenced to serve not less than three nor more than five years in the Illinois State Penitentiary.

On appeal, the defendant contends that he was not proven guilty beyond a reasonable doubt and that the sentence imposed was excessive. He first brought this appeal directly to the Supreme Court, however, the cause was transferred to this Court.

On March 3, 1968, two uniformed police officers, Alfred Schultz and Desmond Butler, responded to a radio call that a man with a gun was threatening persons at 6007 South Park in Chicago. When the officers arrived at the address, they were informed that the man was in the basement. The officers drew their guns, and proceeded in single file down a narrow stairway to the basement. When they were three feet from the bottom of the stairway, the defendant, holding a knife in his hand, jumped out of the basement apartment. Schultz, the lead officer, told the defendant to drop the knife and to freeze. When the defendant took two steps forward, Schultz grabbed him by the throat. Schultz testified that the defendant then "swung over my arm and struck my arms a couple of times and I struck his arm, pushing the knife away from me." Schultz then pushed the defendant away and stated that he would shoot if the defendant did not drop the knife. The defendant replied, "You will have to shoot me," and lunged forward. Schultz shot him in the left shoulder region and then disarmed him.

On cross-examination, Schultz testified that the defendant did not have a gun and that the defendant never succeeded in cutting him with the knife.

Officer Butler, who followed Schultz down the stairway, testified that he as well as Schultz told the defendant to drop the knife. After the defendant lunged in "more or less a stabbing motion up toward Officer Schultz's face" and brushed against Schultz's arm, he Butler, unsuccessfully attempted to knock the knife from the defendant's hand with a baton. Schultz then pushed the defendant away, warned him to drop the knife, and shot once.

Anna Winfield, the defendant's mother, testified that her son, Jerome, was despondent over his job when he arrived at her apartment on the day in question. Jerome stated that he wanted to die, and at about

2:30 P.M. he telephoned the police and told them, "Send the police out right away. I have everybody lying on the floor. I'm a crazy man." The police called back and her son said, "Send them right away." When the doorbell rang, Jerome rushed out the door. She heard someone threaten to kill him if he did not put down a knife. She got up, started toward the door, and heard Jerome say, "Kill me." She heard a shot and saw Jerome fall. Her son did not go up the stairs, and when the shot was fired, he was just standing on the landing.

Alvin Winfield, the defendant's brother, testified that he heard his brother, who was depressed and despondent, say that he wanted to die. Just before the shooting he was with his brother in the kitchen. Jerome picked up a cake knife; and when the doorbell rang, he went out. Afterwards, Alvin heard a shot and left through the back entrance.

Edward Winfield, another of the defendant's brothers, testified that on March 3, 1968, Jerome appeared intoxicated and depressed. He heard his brother call the police and tell them that he wanted to die. When the doorbell rang, Jerome said, "That must be the police. I have got to have something in my hand for them to kill me." Jerome then went out the door. Edward heard a voice say, "Drop that knife." Jerome replied, "Go ahead and kill me. I'm not going to drop the knife." A voice then threatened to blow Jerome's brains out if he did not drop the knife. Edward said he watched Jerome from the living room during the exchange of words, and at no time did he see Jerome start up the stairs or touch anyone. After a shot was fired, he saw his brother fall.

Brenda Anderson, the defendant's cousin, testified that she was standing outside 6007 South Park Avenue when the police arrived. Officer Schultz asked her whether the man had a gun and she answered, "No." She was standing next to Schultz when the shooting occurred. Schultz twice told the defendant to drop the knife, and then he threatened to shoot if he did not drop the knife. The defendant was just standing at the bottom of the stairs; but when he continued to hold the knife, Schultz fired. On cross-examination she was shown a statement which bore her signature. She was then asked if the following question was propounded to her several hours after the incident and if she made the following response:

> "Q. Did you see Jerome make any move toward the police officer with the knife?
>
> A. Yes, after the police told him to drop it, the first time, Jerome took a step toward him."

She denied that she made the answer and stated that she had not read the statement completely before signing it.

Detective Everett Renfroe testified in rebuttal that he interviewed

Brenda Anderson on March 3, 1968, that he asked her specific questions, and that he typed the questions and the answers exactly as given. He further testified that he asked the question and that Brenda Anderson made the answer set forth above.

A person commits a battery if he intentionally or knowingly, without legal justification and by any manner causes bodily harm to an individual or makes physical contact of an insulting or provoking nature with an individual. Section 12—3 of the Criminal Code of 1961. (Ill. Rev. Stat. 1967, ch. 38, par. 12—3.) A person commits an aggravated battery if *inter alia* in committing a battery he knows the individual harmed to be a peace officer while such officer is engaged in the execution of his official duties including arrest and attempted arrest. Section 12—4 of the Criminal Code of 1961. (Ill. Rev. Stat. 1967, ch. 38 ,par. 12—4.)

It is contended "that defendant did not either injure Schultz or make bodily contact with him, or if he did, that bodily contact was not of an insulting or provoking nature within the intent and meaning of the statute, and that at the least, a reasonable doubt exists whether defendant was guilty of aggravated battery by committing battery against a police officer." It is pointed out that the defendant's mother, brother, and cousin all testified that the defendant made no physical contact with Schultz either by the knife or otherwise and that Schultz, who was impeached by a prior inconsistent statement relating to knife wounds, was the only witness to testify in detail to the battery.

■ ■ The record reveals that Officers Schultz and Butler responded to an urgent call that a man with a gun was threatening persons at 6007 South Park. They entered the premises, and as they were descending a narrow stairway, they were confronted by the defendant who was holding a knife. The police ordered the defendant to drop the knife, but the defendant refused. According to the testimony of Officer Schultz, the defendant lunged at him with a knife and struck his arms a couple of times. Officer Butler testified that the defendant made a stabbing motion toward Schultz's face. We believe that there was sufficient evidence to prove beyond a reasonable doubt that the defendant committed aggravated battery. The crux of the defendant's argument is that the testimony of the police officers is not credible:

> "\* \* \* as between three defense witnesses who testified that they saw the confrontation and that no touching took place, and the impeached Schultz, the choice as to credibility should be with the defense witnesses."

It is the function of a jury, in a trial, to weigh testimony and to determine the credibility of witnesses. A reviewing court will not disturb the verdict of a jury unless the verdict is palpably contrary to the manifest

weight of the evidence. (*People v. Tribbett,* 41 Ill.2d 267, 242 N.E.2d 249.) Here the evidence was sufficient to support the verdict.

■■ The defendant alternatively contends that his sentence of 3-5 years in the Illinois State Penitentiary was disproportionate to the offense and excessive. He was convicted of aggravated battery for which the maximum penalty is imprisonment for 5 years. Section 12—4 of the Criminal Code of 1961. (Ill. Rev. Stat. 1967, ch. 38, par. 12—4.) A pre-sentence investigation was prepared, and a hearing in aggravation and mitigation was conducted. It was brought out that the defendant had been convicted of petty theft twice in 1958; he had plead guilty to armed robbery in 1959, and he had been convicted of petty theft in 1963.

■■ The trial judge is invested with the discretion to impose sentences within the limits fixed by law. Under Supreme Court Rule 615 (b) (4) reviewing courts are empowered to reduce the sentence imposed. This power, however, is exercised with caution and circumspection because the trial judge who presided at trial and who heard the matters presented in aggravation and mitigation is ordinarily in a better position than is a reviewing court to determine the punishment which should be imposed. (*People v. Taylor,* 33 Ill.2d 417, 211 N.E.2d 673.) When it is contended that a sentence, though within the statutory limits, is excessive, a reviewing court will reduce the sentence only if the sentence constitutes a great departure from the spirit and purpose of the fundamental law or if it is manifestly in excess of the proscription in Section II of Article II of the Constitution of Illinois which required all punishments be proportionate to the offense. (*People v. Smith,* 14 Ill.2d 95, 150 N.E. 2d 815.) In view of the offense and in view of the defendant's criminal record, we cannot say that the sentence imposed was disproportionate to the offense or excessive.

For the reasons set forth above, the judgment of the Circuit Court is affirmed.

Judgment affirmed.

ADESKO, P. J., and DIERINGER, J., concur.