THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES J. YOUNG, Defendant-Appellant.

(No. 53587;

First District—November 18, 1970.

Gerald W. Getty, Public Defender, of Chicago, (William J. Martin, James B. Haddad, and Theodore A. Gottfried, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago (Robert A. Novelle and James S. Veldman, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Defendant was convicted after a jury trial of the offense of armed robbery. Judgment was entered and he was sentenced to twelve to twenty years. On appeal defendant contends that his armed robbery confession and his in-court identification should have been suppressed.

The defendant does not challenge the sufficiency of the evidence. The facts may be briefly summarized. On November 30, 1966, Rita Kooistra was at the office of her employer when a man, whom she identified in court as the defendant, entered and inquired about a loan. The man then pointed a gun at her and requested the money in the cash drawer. She complied with his request and handed him approximately $200. The robbery took about three or four minutes. After the defendant left the office she ran to the front of the building and asked a gas company man who was working outside if he had seen the man who just robbed the office.

John Tooher, the gas company employee, had just finished pouring concrete on the sidewalk when a man whom he identified as the defendant came out of the loan company's office door and stepped right into the fresh concrete. Tooher looked right at the defendant who stopped for a moment and then kept going. Mrs. Kooistra then ran out of the door and told him she had just been robbed by the man (defendant) who came out a minute before. Mr. Tooher ran down to the corner just in time to see the defendant enter a car. The police were notified, and Mrs. Kooistra gave Officer Benkovich a description of her robber which was sent out over the police radio.

Officer Clarence Domanski testified as to the oral confession given by the defendant concerning the robbery.

The defendant did not testify in his own behalf.

OPINION

Defendant first contends that his oral confession for robbery should have been suppressed as the fruit of a prior improper police interrogation. At the hearing on defendant's motion to suppress the robbery confession there was testimony that at approximately 7:00 A.M. on December 5, 1966, the defendant was arrested as a suspect in the murder of a tavern owner and transported to Area 6, Homicide Station. Chicago police detectives questioned the defendant and elicited from him a statement in which he implicated himself in the murder of the tavern owner. This first statement was concluded at about 8:00 A.M. The

defendant then led the detectives to a weapon which he had abandoned in some bushes near the murder scene. Defendant was returned to Area 6, Homicide, and questioned further. He gave the detectives two more statements about the murder. The last statement was given at 9:50 A.M.

The defendant was then taken from Area 6, Homicide, to the Area 2, Robbery, 19th District Station some time around 10:00 A.M. Neither police detective who had been questioning the defendant at Area 6 had any further contact with him. Both officers denied that any physical abuse or mental coercion had been used on defendant during the taking of the murder statements. The trial judge, however, suppressed the murder statements on the ground that inadequate *Miranda* warnings (*Miranda v. Arizona*, 384 U.S. 436) were given to the defendant and that there was no showing that he knowingly and intelligently waived his constitutional rights.

The defendant was not questioned concerning his alleged participation in the loan company robbery until 11:30 A.M. on December 5, 1966, when Officer Clarence Domanski arrived at the 19th District. When Officer Domanski entered the lockup he recognized the defendant as a person he had known before. The defendant also acknowledged that he knew Officer Domanski. The officer told the defendant that he was a suspect in an armed robbery which occurred at 3717 East 106th Street and advised the defendant of his constitutional rights. The defendant said that he understood these rights. He told Officer Domanski that he might as well tell about the robbery since "You are going to find out about it anyway." Officer Domanski took the defendant upstairs to a more comfortable room and once again explained to the defendant his rights. The defendant told the officer of the planning and execution of the loan company robbery. Domanski's written report made no mention of the *Miranda* warnings being given.

The defendant testified that he was struck and kicked by the police during the taking of the murder statements and that no one told him about his constitutional rights. On his arrival at the 19th District he was questioned by two Federal Bureau of Investigation agents prior to being questioned by Officer Domanski. Domanski "never laid a hand" on him or abused him in any way. He did not tell Domanski that he understood his rights.

The trial judge denied defendant's motion to suppress the robbery confession. The court held that the doctrine of *Westover v. United States* (1966), 384 U.S. 436, 494—497 did not require suppression of the robbery confession.

In *Westover, supra,* the defendant was arrested by local police and interrogated on the night of his arrest. The next day local officers inter-

rogated him again throughout the morning. The court found that there was nothing in the record to indicate that he was ever given any warning as to his rights by the local police. Immediately following defendant's interrogation by local police the F.B.I. began questioning him. After two or two and one-half hours the defendant signed separate confessions to each of two bank robberies. The Supreme Court reversed defendant's conviction holding that the federal authorities were the beneficiaries of the pressure applied by the local police's in-custody interrogation. At page 495 the court states:

"At the time the FBI agents began questioning Westover, he had been in custody for over 14 hours and had been interrogated at length during that period. The FBI interrogation began immediately upon the conclusion of the interrogation by Kansas City police and was conducted in local police headquarters. Although the two law enforcement authorities are legally distinct and the crimes for which they interrogated Westover were different, *the impact on him was that of a continuous period of questioning.* There is no evidence of any warning given prior to the FBI interrogation nor is there any evidence of an articulated waiver of rights after the FBI commenced its interrogation. The record simply shows that the defendant did in fact confess a short time after being turned over to the FBI following interrogation by local police.

Despite the fact that the FBI agents gave warnings at the outset of their interview, from Westover's point of view the warnings came at the end of the interrogation process. In these circumstances an intelligent waiver of constitutional rights cannot be assumed." [Emphasis supplied.]

However, the court narrowed the effect of its decision by stating:

"We do not suggest that law enforcement authorities are precluded from questioning any individual who has been held for a period of time by other authorities and interrogated by them without appropriate warnings. A different case would be presented if an accused were taken into custody by the second authority, removed both in time and place from his original surroundings, and then adequately advised of his rights and given an opportunity to exercise them."

■■ In the instant case the defendant was arrested and transported to Area 6, Homicide, where he confessed to the murder of the tavern owner. The last of defendant's statements concerning the murder was made at 9:50 A.M. Defendant was then taken to the 19th District Station, some two miles from Area 6, at approximately 10:00 A.M. Defendant then stated that he was interrogated by two F.B.I. agents from 11:00 to 11:30 A.M. when Officer Domanski arrived. However, other than the testimony

of the defendant, which was not elaborated upon by him, there is no evidence that any F.B.I. officers ever talked to the defendant. Assuming that defendant's statement was true, the evidence still indicates that he was removed from the first police station at least one hour or more before the alleged F.B.I. interrogation took place. Therefore, unlike *Westover* where there was a continuous period of questioning in the same compelling surroundings, in the instant case there was a break in the period of questioning and the defendant was removed both in time and place from his original surroundings and was interrogated by a second authority.* Further, the defendant knew Officer Domanski; he was not abused by him in any way; he was twice advised by the officer of his constitutional rights before he made any statement concerning the robbery; and as testified to by Officer Domanski, the officer did not even know about the previous interrogation of the defendant at Area 6 concerning the murder charge.

At a hearing on a motion to suppress it is the duty and responsibility of the trial judge to determine the credibility of the witnesses and the competency of the confession. His decision will not be overturned unless it is manifestly against the weight of the evidence. (*People v. Carter*, 39 Ill.2d 31, and *People v. Johnson*, 112 Ill.App.2d 148.) In the instant case the trial judge found that Officer Domanski was in no way the beneficiary of the prior questioning which occurred at a different place and at an earlier time, and that this prior questioning did not vitiate the later voluntary robbery confession. We find that the trial judge's ruling was not against the manifest weight of the evidence and that he properly denied defendant's motion to suppress.

Defendant also argues that his robbery confession should have been suppressed since he was not adequately advised of his rights pursuant to *Miranda v. Arizona, supra*. Defendant claims that the warnings given by Officer Domanski were insufficient. In support of this argument he cites *Fendley v. United States* (5th Cir. 1967), 384 F.2d 923; *Windsor v. United States* (5th Cir. 1968), 389 F.2d 530; and *Lathers v. United States* (5th Cir. 1968), 396 F.2d 524. The issue involved in these cases was whether or not there was a pre-confession warning given which specified that a defendant was entitled "to the presence of an attorney, retained or appointed during interrogation."

---

* We believe "second authority" as used in *Westover, supra*, does not necessarily relate to different enforcement agencies. An "authority" is defined in Black's Law Dictionary 4th Ed. as: "Legal power; a right to command or to act; the right and power of public officers to require obedience to their orders lawfully issued in the scope of their public duties." Therefore, different Chicago police units (Homicide and Robbery) acting independently would each constitute an "authority."

In the instant case Officer Domanski testified that he advised the defendant of constitutional rights:

I told him that he had the right to remain silent, I said to him that if he said anything to me that he could—let me see now—I told him that it would be used against him maybe at a future date in court proceedings; I told him that he could have a lawyer if he wanted to and if he couldn't afford a lawyer, that the State would find some way to get one for him, and that if he didn't care to talk to me, he didn't have to, and that if he wanted to talk to me voluntarily, that he could do it, and if not, he could do it in the presence of a lawyer. * * * He said he understood it.

Therefore, unlike the warnings given in *Windsor, Fendley* and *Lathers,* the warnings given by Officer Domanski in the instant case advised the defendant that he had the right to have an attorney present during the interrogation.

■■ In *People v. Landgham,* 122 Ill.App.2d 9, the defendant also claimed that his confession was taken from him without giving him adequate constitutional warnings of his rights under *Miranda.* However, the court found no merit in this contention. As the court stated at page 22:

"The words of *Miranda* do not constitute a ritualistic formula which must be repeated without variation in order to be effective. Words which convey the substance of the warning along with the required information are sufficient. United States v. Vanterpool, 394 F.2d 697, at 698—699 (2nd Cir. 1968). Consistent with this principle, we recently said in People v. Bosveld, 109 Ill.App.2d 317, at 320—321, 248 N.E.2d 697:

*Miranda* is not a ritual of words to be recited by rote according to didactic niceties. What *Miranda* does require is meaningful advice to the unlettered and unlearned in language which he can comprehend and not which he can knowingly act. We will not indulge semantical debates between counsel over the particular words used to inform an individual of his rights. The crucial test is whether the words in the context used, considering the age, background and intelligence of the individual being interrogated, impart a clear, understandable warning of all of his rights."

■■ We believe that the warnings given by Officer Domanski sufficiently informed the defendant of his constitutional rights.

Defendant next contends that his in-court identification should have been suppressed. He argues that Mrs. Kooistra's in-court identification was based on an improper show-up. According to the evidence presented at the hearing on the motion to suppress the identification, on

the evening of December 5, 1966, Detective Donald Long contacted Mrs. Kooistra, the employee on duty at the time of the loan company robbery, and told her that "we had information that a man was in custody that held her up on the night of November 30th." Detective Long took Mrs. Kooistra to the 19th District Station and escorted her through several locked doors. He took her in to see the defendant who was alone in a locked cell. She indicated that the man in the cell was the robber. Mrs. Kooistra remarked that at the time of the robbery the assailant had been wearing glasses. When the defendant put on his glasses she reaffirmed that the defendant was the robber.

The trial judge ruled that the show-up was improper and unnecessarily suggestive. However, because Mrs. Kooistra had testified that (1) she looked at the robber while he faced her for the entire three or four minutes while he was in the office; (2) described his physical appearance; and (3) would be able to identify the defendant as the robber at trial even without having seen him in the cell, the trial judge refused to suppress her in-court identification.

■■ Where an unfair pre-trial identification procedure is shown, the subsequent in-court identification may be admissible if the State shows that the in-court identification had a prior independent origin arising from an uninfluenced observation of the person later identified as the defendant. (*People v. Lenair*, (Ill.App.2d), (First Dist. No. 53506); *People v. McMath*, 104 Ill.App.2d 302, affirmed 45 Ill.2d 33; and *People v. Cook*, 113 Ill.App.2d 231). We agree with the trial judge's finding that defendant's one man show-up in the locked jail cell was unnecessarily suggestive and improper. However, Mrs. Kooistra's testimony established a prior independent source for her in-court identification of the defendant. Therefore, the court properly denied defendant's motion to suppress her identification.

■■ The motion to suppress included the suppression of identification testimony of any witness. John Tooher, called as a witness by the defendant-petitioner on the motion to suppress, stated that he viewed thirty or more photographs on the evening of the robbery and selected a picture of the defendant as "the man I seen today." We find no error in the photographic procedure used in this case. (*Simmons v. United States*, 390 U.S. 377, and *People v. Townsend*, 111 Ill.App.2d 316). The trial court properly denied the motion to suppress the identification testimony of Mr. Tooher.

The judgment is affirmed.

Judgment affirmed.

ENGLISH and LEIGHTON, JJ., concur.