THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GREGORY DUNN, Defendant-Appellant.

(No. 59932;

First District (2nd Division)—August 19, 1975.

Paul Bradley and Lynn Sara Frackman, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and James S. Veldman, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Gregory Dunn, defendant, was found guilty after a bench trial of the crime of armed robbery (Ill. Rev. Stat. 1971, ch. 38, par. 18—2). He was sentenced to a term of 5 to 8 years. Defendant appeals arguing (1) that the trial court erred in denying his motion to suppress the identification testimony, (2) that the evidence was insufficient to establish his guilt beyond a reasonable doubt, (3) that the trial court erred in admitting his oral statement into evidence, and (4) that his sentence is excessive.

At trial Lawrence Podolak testified that on October 26, 1971, he was working at the Citgo gas station located at 147th and Cleveland, Posen, Illinois. At approximately 11:30 p.m., defendant drove into the gas station in a white Mustang. Defendant asked Podolak for change. Podolak testified that as he went into the cash register defendant produced a gun and announced a holdup. Defendant forced Podolak into the back room and ordered him to put his hands on the wall. Defendant then took Podolak's wallet and roll of bills from his pocket totalling between $245 and $270. Podolak testified that there were lights on in the front of the gas station where defendant initially confronted him and in the back room of the station. Defendant then ordered Podolak to crawl underneath the sink and Podolak complied. Defendant laid a 5-foot stepladder across Podolak's back and put a pail on the ladder. Defendant told Podolak that if he heard the pail fall he would return and shoot Podolak. Defendant then went into the front office where he took some rolls of change out of the drawer. Podolak testified that after hearing defendant leave the station he got up and telephoned the police. The entire robbery took approximately 5 minutes. Podolak testified that 10 to 15 minutes after he telephoned the police a squad car pulled into the station. At that time

he observed defendant seated in the rear of the squad car and identified him as the man who had robbed him.

Howard Farning, a police officer from the Village of Calumet Park, testified that at approximately 11:45 p.m. on October 26, 1971, he was on routine patrol when he received a call of an armed robbery. The call included a description of a male Negro wearing a dark leather coat, dark pants and driving a white 1965 or 1966 Mustang. A few moments later Officer Farning observed defendant wearing a dark coat and driving a white 1965 or 1966 Mustang in the area of 127th Street and I-57. Officer Farning testified that he pulled defendant's vehicle over and asked defendant to produce his driver's license. Defendant complied. Officer Farning then asked defendant where he was coming from and defendant stated that he was coming from Harvey. Defendant could not say where in Harvey. Officer Farning went back to his vehicle and radioed for a further description of the wanted suspect. Thereafter Officer Farning went back to defendant's vehicle and again asked where in Harvey defendant had been coming from. At that time the defendant said, "Man, give me a break." Officer Farning asked what the defendant meant and defendant stated, "I'll give it back." Officer Farning asked what defendant was going to give back and defendant said, "I'll give the money back I took from the gas station." Defendant was then placed under arrest and given his *Miranda* warnings. Officer Farning conducted a search of the defendant and recovered a .22-caliber nine-shot revolver from defendant's belt. Defendant was subsequently turned over to Captain Powers of the Posen Police Department.

Raymond W. Powers, the chief of police for the Village of Posen, testified that at approximately 11:45 p.m. on October 26, 1971, he received custody of defendant from Farning. He conducted a search of defendant which revealed a roll of silver coins and United States currency totalling approximately $239 in defendant's pocket. Defendant was handcuffed and taken back to the gas station for purposes of identification.

Gregory Dunn, defendant, testified that on October 26, 1971, at approximately 9 p.m., he arrived at the Thomas home in Harvey, Illinois, for a business meeting. At about 11 p.m., Randy Johnson came to the meeting. Defendant testified that at about 11:30 p.m., he left the meeting to go to the Steak and Take Restaurant where he is employed. Defendant stated that he was carrying some money and a gun belonging to the restaurant in between the two bucket seats in the front of his car. Defendant stated that while traveling on I-57 he was forced over by a small black car which he did not believe to be a police vehicle. Defendant stated that as soon as Officer Farning got out of the vehicle, he

saw that he was wearing a uniform and recognized him as a police officer. Officer Farning asked defendant for his driver's license and defendant complied. Officer Farning then went back to his car and used the radio. Shortly thereafter two policemen from Robbins, Illinois, showed up and handcuffed defendant. Defendant stated that the police officers then searched the vehicle finding the money and the gun inside the car. Defendant stated that he was then handcuffed and taken back to the scene of the robbery. Defendant denied ever making any statements to Officer Farning in which he stated that he would give back the money taken in the robbery of the gas station.

Lewis Thomas and Hubert Thomas testified that on October 26, 1971, at approximately 9 p.m., they met the defendant at their father's house in Harvey, Illinois. The meeting was held to discuss the possibility of opening up a new business. Defendant left the meeting at approximately 11:30 p.m. saying that he had to go to work.

Randy Johnson testified that he owned the Steak and Take Restaurant at 1311 South Halsted. Defendant had worked for him for approximately 5 years. Johnson testified that on October 26, 1971, he arrived at the meeting at the Thomas home in Harvey, Illinois, at approximately 11 p.m. At approximately 11:15 p.m., he told defendant to return to the restaurant to relieve the midnight shift. It was part of defendant's duty to bring monies for the change of shifts, and to the best of his knowledge, defendant did have monies for the restaurant on the night in question. He did not, however, know how much money defendant had.

■■ Defendant's initial contention is that the trial court erred in denying his motion to suppress the identification testimony. Defendant argues that his identification by Podolak at the service station was a one-man showup which was impermissibly suggestive. We disagree. The practice of showing suspects singly to persons for the purpose of identification and not as part of a lineup has been widely condemned, but it may be justified when prompt identification is necessary and where it is apparent that the witness had an excellent opportunity to observe the defendant during the commission of the crime. *People v. McMath*, 45 Ill.2d 33, 256 N.E.2d 835; *People v. Broadnax*, 23 Ill.App.3d 68, 318 N.E.2d 499.

In the *McMath* case, the defendant was convicted of robbery. The facts adduced at trial revealed that defendant was stopped for a traffic violation. The arresting officer found a toy pistol and a stocking cap on the front seat of defendant's vehicle. The officer radioed and learned that a robbery had just occurred. The defendant was immediately taken to the scene of the robbery where he was identified by the victim. On

appeal defendant argued that the procedure by which he was shown to the victim singly was improper. The court rejected defendant's contention holding (45 Ill.2d 33, 36):

> "In this case we find that the service station confrontation was justified because prompt identification was necessary to determine whether defendant was the offender or whether the officers should continue their search."

■■ In the case at bar, defendant was stopped by Officer Farning because he matched the description of a man wanted for robbery. Within 15 minutes after the robbery occurred, the defendant was brought back to the scene of the robbery where he was identified by the victim. The police, therefore, were attempting to quickly determine whether defendant was the robber or whether they should continue their search. Under these circumstances, the service station identification of the defendant by Podolak was proper.

■■ In addition, we would note that Podolak's testimony at trial established that during the robbery which took approximately 5 minutes, he had ample opportunity to view defendant from close proximity. Podolak first observed defendant when he walked into the gas station and asked for change. Podolak described that area as being well lit. Podolak's testimony established that he was able to view defendant for a sufficient period of time from close proximity so as to properly fix his identity. (*People v. Wright*, 10 Ill.App.3d 1035, 295 N.E.2d 510 (abstract opinion).) The rule is well established that the in-court identification of a defendant by a witness is properly admitted into evidence if it has a source independent of and is untainted by any viewing of the defendant alone. (*People v. Taylor*, 52 Ill.2d 293, 287 N.E.2d 673.) Under the facts of this case, we conclude that Podolak's in-court identification of the defendant had a source independent of and was untainted by any viewing of the defendant alone. In any event, therefore, the identification testimony was properly admitted into evidence.

Defendant's next contention is that the evidence was insufficient to establish his guilt beyond a reasonable doubt. The rule is well established and has often been stated that in a bench trial the credibility of witnesses is for the trier of fact to determine and his determination will not be disturbed on review unless it is based upon evidence which is so unsatisfactory as to raise a reasonable doubt as to defendant's guilt. (*People v. Wright*, 3 Ill.App.3d 262, 278 N.E.2d 175; *People v. Daugherty*, 1 Ill.App.3d 290, 274 N.E.2d 109.) An identification of a defendant by one witness if positive and credible is sufficient to sustain a conviction even though contradicted by the defendant. *People v. Bennett*, 9 Ill.App.3d 1021, 293 N.E.2d 687.

Defendant argues that the sketchy description which Podolak gave to police immediately after the occurrence is reflective of an inadequate opportunity to observe. It is noted, however, the complained-of description was given when Podolak initially telephoned the police and was, of its very nature, brief. The sufficiency of Podolak's initial telephonic description raised, at best, a question of credibility which is for the trier of fact to determine. As earlier stated, the record reflects that Podolak had a sufficient opportunity to observe defendant under adequate lighting conditions so as to positively fix his identity.

Moreover, Podolak's testimony was corroborated by the testimony of Officer Farning and Chief Powers. Their testimony established that defendant was observed a few moments after the crime coming from the direction of the crime in an automobile which had been described by the victim. Defendant had in his possession a nine-shot .22-caliber revolver, similar to that used in the robbery. Defendant also had an amount of United States currency and a roll of coins similar to those taken in the robbery. After being stopped by Officer Farning, defendant stated that he would give back the money taken in the robbery of the gas station. Although defendant on appeal seeks to challenge the testimony of Officer Farning and Chief Powers, this again raises merely a question of credibility which is properly resolved by the trier of fact.

■■ Defendant also argues that his unrebutted alibi defense raises a reasonable doubt of guilt. The trial court, however, is not obliged to believe an alibi defense presented by a defendant, even though that defense may be supported by a number of witnesses. (*People v. Perry,* 21 Ill.App.3d 18, 315 N.E.2d 173.) After hearing all of the evidence, the trial judge, who had the superior opportunity to observe the witnesses, determined that defendant was the perpetrator of the crime charged. From an examination of the entire record, we cannot say that his determination was erroneous or that defendant's alibi testimony raised a reasonable doubt as to his guilt.

Defendant next maintains that the trial court erred in admitting into evidence his oral statement which was made prior to an admonishment of his *Miranda* rights. The record reflects that Officer Farning stopped defendant's vehicle on the expressway because it matched the radioed description of the vehicle driven by the armed robber. After defendant produced his driver's license, Officer Farning asked where he had been coming from. Defendant stated that he had been in Harvey, Illinois. When asked where in Harvey, defendant did not answer. The officer then left defendant by his vehicle, returned to the police vehicle, and contacted the dispatching agency for a possible further description of the perpetrator. Officer Farning then returned to defendant and asked

him if he could recall where he had been in Harvey. At that point, defendant asked Officer Farning to "give him a break." When asked what he meant, defendant stated that he would give back the money taken in the gas station robbery. The officer testified that he then placed defendant under arrest and advised him of his rights.

In *Miranda v. Arizona*, 384 U.S. 436, the Supreme Court held that before any statement by a defendant stemming from a custodial interrogation may be substantively introduced into evidence by the prosecution, the State must first prove that defendant was fully informed of his constitutional rights. The court defined custodial interrogation as any interrogation initiated by police while the defendant is in custody or while he has been deprived of his freedom of action in any significant way. (384 U.S. 436, 444.) In so holding, the court sought to safeguard the fifth- and sixth-amendment rights for individuals placed by the police in an inherently coercive environment which would make an accused feel compelled to answer questions. Given the reason for the rule, the court in *Miranda* clearly indicated that its decision was not intended to hamper the traditional function of police officers in investigating crime and that general on-the-scene questioning of citizens in the fact-finding process was not affected by the holding. (384 U.S. 436, 477.) Therefore, the crucial issue is fixing the time when, absent formal charge or arrest, custody of a defendant is established.

■■ The line distinguishing between investigation and custodial interrogation is often difficult to draw, but generally, the exception to *Miranda* warning applies where there has been a complete absence of the element of coercion, actual or potential, or police dominance of the individual's will. (*People v. Helm*, 10 Ill.App.3d 643, 295 N.E.2d 78; *United States v. Gibson* (4th Cir. 1968), 392 F.2d 373.) A proper analysis should consider the amount of knowledge possessed by the police at the time of the interrogation, the tone and method of questioning, and who, if anyone, was the focus of the investigation at the time of the interrogation. *People v. Bailey*, 15 Ill.App.3d 558, 304 N.E.2d 668.

In *People v. Parks*, 48 Ill.2d 232, 269 N.E.2d 484, the defendant was convicted of obtaining dangerous drugs by fraud. The facts adduced at trial demonstrated that two police officers arrived at a pharmacy in response to a call of the pharmacist. Upon their arrival the pharmacist identified the defendant who was walking out the door. The police officers stopped the defendant outside the front door to the pharmacy. One of the officers then asked defendant if he had made a purchase at the drug store and for whom the purchase was made. Defendant's responses to the questions were admitted into evidence at trial. On appeal, defendant argued that his statements were improperly admitted because he had

not been given his *Miranda* warnings. The Supreme Court rejected defendant's argument holding that the inquiries made by the police officers were within the scope of permissible general on-the-scene questioning and that it was not necessary that the defendant be given his *Miranda* warnings prior to such questioning. (For a more factually analogous decision, see *Jones v. State* (1967), 2 Md.App. 429, 234 A.2d 900.)

■■ Similarly, cases have held that *Miranda* warnings are not required when a police officer makes inquiries of persons in public locations under suspicious circumstances. (*Jennings v. United States* (5th Cir. 1968), 391 S.2d 512; *United States v. Gibson* (4th Cir. 1968), 392 F.2d 373; *United States v. Thomas* (2d Cir. 1968), 396 F.2d 310; *People v. Milligan*, 107 Ill.App.2d 58, 245 N.E.2d 551; *People v. Tolefree*, 9 Ill.App.3d 475, 292 N.E.2d 452.) These decisions held that policemen confronted with suspicious circumstances, which might have been resolved with a satisfactory explanation from the person questioned, were permitted to make inquiries which were of an investigative nature without first giving the *Miranda* warnings.

In the present case, defendant was stopped by Officer Farning based upon a radio call containing a general description of the perpetrator of the armed robbery and of the automobile which he was driving. The questions asked were of a general investigatory nature and could not be characterized as a process of investigation which lent itself to eliciting incriminating statements. Additionally, the setting in which the questions were asked do not bespeak of an inherently coercive atmosphere. The inquiries were made not in a police vehicle or station, but rather while defendant was in or by his own automobile. That the questions were investigatory is cogently borne out by the fact that Officer Farning, advised that an armed robbery had been committed, left defendant unattended, without conducting a pat-down for weapons, to return to his police vehicle and ascertain whether any further description of the perpetrator was available. Based on the record before us, we can only conclude that the questions propounded by Officer Farning prior to giving defendant his *Miranda* warnings were of a general investigatory nature ensuing from the fact that defendant and his vehicle met the general description of a robbery suspect. Under these circumstances, it was not necessary for defendant to be given his *Miranda* warnings.

■■ Defendant's final contention is that his sentence is excessive and should be reduced. While this court has the power to reduce sentences (Ill. Rev. Stat. 1971, ch. 110A, par. 615(b)), that power should be exercised with care and only where it is manifest in the record that the sentence is excessive. (*People v. Fox*, 48 Ill.2d 239, 269 N.E.2d 720.) The trial judge who heard the testimony and matters presented in aggrava-

tion and mitigation is ordinarily in a better position than a reviewing court to determine the proper punishment to be imposed. (*People v. Winfield*, 133 Ill.App.2d 48, 272 N.E.2d 848.) We believe the sentence imposed by the trial judge was proper.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

DOWNING, P. J., and LEIGHTON, J., concur.