THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* ROBERT A. SNOW, Defendant-Appellee.

Second District (1st Division)    No. 74-279

Opinion filed July 8, 1976.

Patrick E. Ward, State's Attorney, of Dixon (Charles D. Sheehy, Jr., of Illinois State's Attorneys Association, of counsel), for the People.

Henry S. Dixon and Jock E. Heaton, both of Dixon, Devine, Ray & Morin, of Dixon, for appellee.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

This is an appeal by the State pursuant to Supreme Court Rule 604(a)(1) (Ill. Rev. Stat. 1973, ch. 110A, par. 604(a)(1)) from an order of the trial court suppressing certain statements made by the defendant on the ground that defendant was not advised of his constitutional rights in accord with *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, prior to making the statements. The inculpatory statements were made to a security officer at the Dixon State School where defendant had been employed. The sole question presented is whether defendant should have been given the *Miranda* warnings prior to the making of the statements.

At the hearing on the motion to suppress, the following facts appeared. On December 3, 1973, personnel at the Dixon State School reported that they had observed bruises and lacerations on the leg of a blind and mute individual who resided at the school. One Roger Hoffman, director of Unit #10, the unit where the incident occurred, and one Bobby L. Jones, acting chief security officer for the school, initiated an inquiry. A number of employees were questioned about the incident, including the defendant, Robert Snow, a mental health trainee who worked at the cottage in which the injured individual resided. Pending the outcome of the investigation, defendant was relieved of his duties at the school. On December 3 defendant was interviewed by Jones and Hoffman at the Unit #10 office, which is located within a training center building on the school grounds and which measures approximately 15 by 20 feet in size

with windows which look out on the exterior of the building. At this interview defendant indicated that he had no knowledge of the cause of the injuries under investigation but he appeared nervous and upset. Pursuant to directions given by one David Edelson, Superintendent of the Dixon State School, defendant was again questioned by Jones and Hoffman in the Unit #10 office on December 12. During the course of the interview defendant stated that he was involved and signed a statement to that effect. At neither the December 3 nor the December 12 interview was the defendant given any of the *Miranda* warnings.

Five days later, on December 17, 1973, Jones reported his findings to Detective Sergeant Hagen of the Dixon Police Department. Detective Hagen arrested defendant, took him into custody and gave defendant the *Miranda* warnings. Thereafter, on December 17, defendant admitted orally and in writing that he had struck the resident. On January 29, 1974, defendant was indicted for aggravated battery.

Jones' functions as Security Officer IV, which, it was stipulated, is acting chief of security, included the duty of supervising the activities of security officers in law enforcement, investigating theft, abuse, accidents or unusual occurrences and reporting his information to local law enforcement personnel. He wears a "police type" uniform and a badge imprinted with the words "Security Service, Department of Mental Health." In addition, Jones is a deputy sheriff of Lee County, although the sheriff who deputized him died prior to December 3 and Jones was not deputized by the new sheriff until December 17, 1973.

Following the conclusion of the hearing on the motion to suppress, the trial court entered its order suppressing all statements made by defendant in his interviews with Jones and Hoffman on December 3 and December 12 because defendant was not given the *Miranda* warnings, and suppressing the statements made by defendant on December 17 to Detective Hagen because they were "fruit of the poisonous tree." In its findings of fact, the trial court found that, although Jones was a deputy sheriff of Lee County, he "* * * was not acting in that capacity during any interrogation of the defendant." The trial court further found that at the December 12 interview, "* * * defendant was under no physical restraint * * * and was free to leave at any time." Among its conclusions of law, the trial court ruled that, for purposes of determining whether the *Miranda* warnings were applicable, Jones was a law enforcement officer because "[h]e personally investigates criminal activity and is required to relay his findings to local law enforcement officials." Additionally, the trial court states:

> "If the State of Illinois or any other branch of government has deemed it necessary to authorize an employee to engage in law enforcement activities on its property, then it must be held to the

same standards as are required of other law enforcement officials * * * ."

The trial court found that the questioning of defendant amounted to custodial interrogation for the following reasons:

"Defendant was interrogated on 12/12/73 in an office under the control of the interrogator, Mr. Jones. His presence was required by his employer. The investigation obviously had focused in on the defendant at that time. He had previously been suspended. Certainly, he was placed in an incommunicado situation and deprived of a free and rational decision by those not acting solely in his interest."

It is the People's contention that the trial court erred in making its suppression order because Jones was not required to give defendant the *Miranda* warnings. The *Miranda* warnings must be given before law enforcement officers may initiate custodial interrogation on pain of suppression of statements made in violation thereof. In *Miranda,* the Supreme Court denied "custodial interrogation" as "* * * questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." (384 U. S. 436, 444, 16 L. Ed. 2d 694, 706, 86 S. Ct. 1602.) It is argued by the People that under the circumstances of this case, for *Miranda* purposes, Jones was not a "law enforcement officer" and, or assuming that he were a law enforcement officer, in the alternative, that the statements were not made during "custodial interrogation." We agree with the People's second alternative argument that assuming Jones was a law enforcement officer within the purview of the *Miranda* decision the questioning of the defendant by Jones and Hoffman was noncustodial in nature and, as a result, the *Miranda* warnings need not have been given to defendant. Accordingly, we reverse the order of suppression and remand the case. In light of this result, we find it unnecessary to expound upon the issue of whether Jones should be viewed as a law enforcement officer for *Miranda* purposes. Our discussion will thus be focused upon the issue of "custodial interrogation," the question being whether defendant was "taken into custody or otherwise deprived of his freedom of action in any significant way."

■■ An examination of the Supreme Court opinion in *Miranda* reveals that the Court was concerned with the problem of admitting into evidence statements which an individual made pursuant to questioning by law enforcement officers in situations in which an inquiry had focused upon the individual, the individual was held incommunicado in a police dominated or otherwise unfamiliar atmosphere, and, as a result, the danger existed that the statements were the product of physical or psychological coercion rather than of free will. The Court made it clear

that where the statement is either volunteered (see also *People v. Howell* (1970), 44 Ill. 2d 264, 255 N.E.2d 435) or made pursuant to general on-the-scene investigation as to the facts surrounding a crime (see also *People v. Parks* (1971), 48 Ill. 2d 232, 269 N.E.2d 484) *Miranda* is inapplicable. The difficult question presented in this, and in numerous other cases which have considered the issue, is drawing the line between investigative and custodial questioning.

■■ While it is clear that each case must turn upon its particular factual setting, several factors which have been considered by the courts in resolving the issue are relevant in the present case. In *People v. Dunn* (1975), 31 Ill. App. 3d 854, 860, 334 N.E.2d 866, 871, the court noted that the following factors were relevant in making the distinction:

> "The line distinguishing between investigation and custodial interrogation is often difficult to draw, but generally, the exception to *Miranda* warning applies where there has been a complete absence of the element of coercion, actual or potential, or police dominance of the individual's will. (*People v. Helm*, 10 Ill. App. 3d 643, 295 N.E.2d 78; *United States v. Gibson* (4th Cir. 1968), 392 F.2d 373.) A proper analysis should consider the amount of knowledge possessed by the police at the time of the interrogation, the tone and method of questioning, and who, if anyone, was the focus of the investigation at the time of the interrogation. *People v. Bailey*, 15 Ill. App. 3d 558, 304 N.E.2d 668."

In *People v. Helm* (1973), 10 Ill. App. 3d 643, 648, 295 N.E.2d 78, 82, the court cited *Lowe v. United States* (9th Cir. 1969), 407 F.2d 1391, with approval for the proposition that the following objective standard should be used in determining whether an individual is in custody for *Miranda* purposes:

> "* * * a reasonable man standard should be applied to determine if a defendant reasonably believed that he was not free to leave the scene of the questioning or was merely acting voluntarily."

In *In re Orr* (1967), 38 Ill. 2d 417, 231 N.E.2d 424, the Supreme Court, in concluding that a statement was volunteered and the product of a compulsive conscience or otherwise psychologically motivated rather than the result of a coercive atmosphere, found relevant the fact that the minor knew the officers to whom he confessed.

In *People v. Richards* (1970), 120 Ill. App. 2d 313, 343, 256 N.E.2d 475, 491, this court found *Miranda* inapplicable for the following reasons:

> "* * * defendant *was not in custody* at the time of Sergeant Ryan's conversation with him. Defendant came to the station voluntarily. At the time, the autopsy had not been performed on Leone Richards' body and there is no evidence that Ryan was aware of foul play; defendant was not under arrest, nor held under

circumstances which would indicate that he was not free to go at any time; there is no indication that defendant was then considered suspect. He was generally asked about what had happened during the day of February 3rd and volunteered various remarks * * *." (Emphasis in original.)

Also, in *People v. Drumheller* (1973), 15 Ill. App. 3d 418, 304 N.E.2d 455, defendant was found not to be in custody for *Miranda* purposes where he voluntarily appeared at a police station upon request, was not arrested and left after a general inquiry into the incident under investigation.

In *People v. Fischetti* (1970), 47 Ill. 2d 92, 264 N.E.2d 191, one of the factors which led the Supreme Court to conclude that the questioning of defendant at a reasonable hour in his parent's apartment in the presence of his parents and brother was noncustodial was the fact that the questioning was not prolonged. The court found that there was no danger of either compulsion or intimidation or trickery which *Miranda* was designed to eliminate.

● 3   The place in which the questioning takes place is also a relevant factor in determining whether or not the interrogation is custodial. It is clear that the fact that the interrogation occurs at a place other than a police station does not make *Miranda* inapplicable. Thus, in *Orozco v. Texas* (1969), 394 U.S. 324, 22 L. Ed. 2d 311, 89 S. Ct. 1095, the United States Supreme Court found *Miranda* applicable to the questioning of a defendant in his bedroom by officers at 4 a.m. However, several cases have held *Miranda* inapplicable to interrogations conducted at an individual's place of employment or business. (See Annot., 31 A.L.R. 3d 565, 595-96 (1970).) Thus, in *People v. Stansberry* (1971), 47 Ill. 2d 541, 268 N.E.2d 431, the Supreme Court held *Miranda* inapplicable where a member of a student association responded to police inquiries concerning ownership of a coat found on premises the police were searching pursuant to a warrant. The court held:

"Here upon entry, the police, according to Harvey's own testimony, asked those present to be seated, presented the warrant to him, and then after he had read it and before conducting the search they made the normal and ordinary inquiry concerning the clothes which were scattered about the office. Under these circumstances he was not then deprived of his freedom of action in any significant way. The compulsion and danger of intimidation that the *Miranda* rule was designed to eliminate was clearly not present." 47 Ill. 2d 541, 548, 268 N.E.2d 431, 435.

In *United States v. Delamarra* (D.D.C. 1967), 275 F. Supp. 1, an interview of a Howard University employee was held noncustodial where it was conducted in a briefing room at the university by a university official and a police officer. The court noted that the defendant, who had

come to the university to pick up his pay check, was not under arrest, that he was co-operating with police in a still general investigation, the investigation had not focused on the defendant and defendant was not deprived of his freedom of action in any significant way.

Finally, in *Beckwith v. U.S.* (1976), ___ U.S. ___, 96 S. Ct. 1612, 1618, 48 L. Ed. 2d 1, 8, an interview with a taxpayer by two special agents of the Internal Revenue Service, investigating potential criminal income tax violations, was held to be noncustodial where it was conducted partially at a private home where the taxpayer occasionally stayed and partially at his place of employment despite the fact that "* * * the 'focus' of an investigation may indeed have been on Beckwith at the time of the interview in the sense that it was his tax liability which was under scrutiny * * *."

The Court stated:

> "* * * [h]e hardly found himself in the custodial situation described by the *Miranda* Court as the basis for its holding."

The Court concluded that:

> "*Miranda* specifically defined 'focus,' for its purposes, as 'questioning initiated by law enforcement officers *after* a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' "

In summarizing, that court then stated:

> "We recognize, of course, that noncustodial interrogation might possibly in some situations, by virtue of some special circumstances, be characterized as one where 'the behavior of * * * law enforcement officials was such as to overbear petitioner's will to resist and bring about confessions not freely self-determined. . . .' Rogers v. Richmond, 365 U.S. 534, 544, 5 L. Ed. 2d 760, 81 S. Ct. 735 (1961). When such a claim is raised, it is the duty of an appellate court, including this Court, 'to examine the entire record and make an independent determination of the ultimate issue of voluntariness.' Davis v. North Carolina, 384 U.S. 737, 741-742, 16 L. Ed. 2d 895, 86 S. Ct. 1761 (1966)."

In applying the authorities above cited to the instant case, we find that the questioning of defendant was noncustodial. First, defendant voluntarily came to the scene of the questioning at the request of his employer and either believed, or should have believed under the reasonable man standard, that he was free to leave at all times. The questioning occurred upon the premises of his employer in a relatively large, windowed room. Defendant was not arrested prior to or immediately following the questioning and Jones testified that he had no intention of arresting defendant. There is no evidence that defendant was deprived of his freedom of action in any significant way or that he would

not have made his statement to Jones and Hoffman but for any improper, coercive influences upon him. It appears that defendant consented to the inquiry in cooperation with the ongoing investigation. His statement does not appear to be the product of official intimidation or trickery. It further appears that the questioning occurred at a reasonable hour, was not prolonged and there is no evidence that it was conducted in a harsh or accusatory manner. Next, defendant was questioned by individuals who, it may reasonably be surmised, were not strangers to him based upon their activities and relationship at the school. Finally, for *Miranda* purposes, the investigation had not yet focused upon the defendant Snow and that it was still in the general fact-finding stage.

Since defendant's statement was made in a non-custodial setting, it is clear that *Miranda* is inapplicable and, further, that the statements made by defendant to Detective Hagen are not "fruit of the poisonous tree." We therefore reverse the order suppressing defendant's statements and remand the case to the trial court for further proceedings.

Reversed and remanded.

SEIDENFELD and HALLETT, JJ., concur.