**UNITED STATES of America**

v.

**Gwenda STEELE.**

**Crim. No. HCR 86–107.**

United States District Court,
N.D. Indiana,
Hammond Division.

Nov. 26, 1986.

Kevin E. Milner, Asst. U.S. Atty., N.D. Ind., Hammond Div., Hammond, Ind., for the U.S.

Albert E. Marshall, Jr., Gary, Ind., for Gwenda Steele.

## ORDER

MOODY, District Judge.

This matter comes before the court for hearing on a motion to suppress inculpatory statements allegedly made by defendant Gwenda Steele. By her motion, Steele asserts that any statements she made to Postal Service Inspectors were not voluntary and therefore requests the court to suppress these statements. The court conducted a hearing in open court on Thursday, November 20, 1986, at which the court heard evidence and arguments on the motion to suppress pursuant to 18 U.S.C. § 3501.

### I.

On October 31, 1986, defendant Gwenda Steele, a Postal Service employee, was questioned by two United States Postal Inspectors concerning a money shortage discovered at an East Chicago, Indiana Post Office. Based on her statements made to them and other evidence, defendant Steele was indicted on one count of misappropriating postal funds in violation of 18 U.S.C. § 1711. She now asks the court to suppress these statements made to the postal inspectors because they were made involuntarily and because she was not advised of her constitutional rights during custodial interrogation. At the suppression hearing the court heard the testimony of the defendant and the two postal inspectors who questioned her. Initially, the court notes that on a motion to suppress an alleged involuntary confession, the defendant must first establish a basis for the motion to suppress. The burden then shifts to the government to prove by a preponderance of the evidence that the statement was given voluntarily. *United States v. Madison*, 689 F.2d 1300, 1308 (7th Cir.1982). The court finds that the defendant's motion, filed November 7, 1986, satisfied her initial burden of establishing a basis for the suppression hearing. At the hearing, the government attempted to show that the confession was voluntary by arguing that the defendant was not "in custody" at the time she made the incrimi-

nating statements. Therefore, the government concludes the statements should be admissible even though the defendant was not advised of her rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Because the parties have raised only the custody issue, the court also confines its analysis to the issue of whether the defendant was in custody when the incriminating statements were made.

## II.

In *Miranda*, the Supreme Court held that the prosecution, absent the use of procedural safeguards, could not use in its case in chief statements made by an accused during custodial interrogation. 384 U.S. at 444, 86 S.Ct. at 1612. The requirement of advising the accused of his or her constitutional rights applies when a person "has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* The often-quoted definition of custody, however, is not to be given talismanic significance; in each instance the court must decide whether the situation exerted on the detained person "pressures that significantly impair[ed] his free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights." *Berkemer v. McCarty*, 468 U.S. 420, 437, 104 S.Ct. 3138, 3149, 82 L.Ed.2d 317 (1984).

■ When determining if a detained person was "in custody," the court should first consider whether a reasonable person would under the circumstances feel free to leave. Other factors, however, must also be considered to evaluate the coerciveness of the environment in which the statements were obtained. *United States v. Manbeck*, 744 F.2d 360, 379 (4th Cir.1984) *cert. denied*, 469 U.S. 1217, 105 S.Ct. 1197, 84 L.Ed.2d 342 (1985). Among these factors are the language and degree of pressure

used to summon and detain the individual, the neutrality of the surroundings, the number of law enforcement officers at the scene, the degree of physical restraint placed on the suspect and the duration and character of the interrogation. *United States v. Hudgens*, 798 F.2d 1234, 1236 (9th Cir.1986); *United States v. Striefel*, 781 F.2d 953, 961 (1st Cir.1986). The relevant factors should be evaluated objectively to determine how a reasonable person in the suspect's position would have understood the situation.[1] *See Berkemer*, 468 U.S. at 442, 104 S.Ct. at 3152.

The defendant's version of the interrogation varied drastically from the postal inspectors' account of the events. The court finds the defendant's testimony to be largely incredible. Her statements describing the incident bordered on the extreme. She claimed that the inspectors threatened to have her "thrown down and arrested" if she did not confess to embezzling money from the post office. She also claimed that she was in fear of physical violence from the inspectors. The postal inspectors, however, did not appear to the court to be the type of officials prone to such threats. Nor would this situation appear to be so exigent to warrant the drastic measures allegedly taken by the inspectors. The defendant's version of the events therefore is suspect.

■ Even taking the postal inspectors' testimony as true, however, the court finds that the defendant's confessions were the product of coercive forces of the type designed to be dispelled by the giving of *Miranda* warnings. The inspectors testified that they contacted the defendant's supervisor at the Harbor Branch, East Chicago Post Office and then approached the defendant at her work station. The defendant had no advance notice that the inspectors wanted to talk to her or that she

---

**1.** The parties have not addressed the question whether the protections accorded by *Miranda* are invoked where an individual is interrogated by a postal inspector. The court notes, however, that courts have consistently applied *Miranda* to all types of government agents, including postal inspectors. *See e.g., United States v. Gironda*, 758 F.2d 1201, 1216 (7th Cir.), *cert. denied,* — U.S. ——, 106 S.Ct. 523, 88 L.Ed.2d 456 (1985); *United States v. Gillyard,* 726 F.2d 1426, 1428–29 (9th Cir.1984).

was under investigation. After identifying themselves, the inspectors asked the defendant to accompany them to a small room in the back of the post office. She did so without resistence.

The "mechanical room," where the interrogation took place, is a small enclosed room in the rear of the East Chicago Post Office. It contains a furnace, wash basin and some employee lockers. The defendant and one of the inspectors sat at a table in a small open area to one side of the room. The other inspector sat away from the table, between the table and the only exit from the room. The door to the room remained closed during the interrogation.

The inspectors questioned the defendant about a money shortage at a post office service window, sometimes the defendant's work station. The defendant initially denied any involvement in the shortage. One inspector then began to discuss various transactions that might have accounted for the missing funds. When money orders were mentioned, the inspector detected from the defendant's "body language" an uncomfortable reaction. He then pursued the topic of money orders, eventually eliciting statements from the defendant to the effect that she issued money orders to herself without paying for them.

The questioning lasted at least one hour and forty-five minutes, apparently without interruption. The defendant did not leave the room during that time except to retrieve her driver's license at the inspectors' direction. She was not told at any time that she was free to leave. Nor was she told that she did not have to answer the inspectors' questions.

After the defendant made incriminating statements, the inspectors directed her to produce a written statement concerning the embezzlement of funds. Although one of the inspectors told the defendant that the statement should be voluntary, he suggested that she include a paragraph stating her remorse for her acts. He also suggested the contents of other parts of the written confession, including a statement that she wrote the money orders because of person-

al financial problems. During the entire interrogation period, the inspectors never informed the defendant of her constitutional rights as they were delineated in *Miranda.*

In evaluating the factors relevant to a custody determination, the court first looks at the language and pressure used to summon and detain the defendant. Although no show of force or forceful language was used, there was pressure inherent in the initial confrontation. The inspectors are also postal employees and solicited the help of the defendant's supervisor in approaching the defendant. The inspectors therefore represented not only law enforcement authority, but the authority of the defendant's employer as well. In addition, the defendant was never told that she was free to leave or that she could refuse to answer questions. Under those circumstances, the court finds that a reasonable person would not feel free to rebuff the inspectors out of fear of jeopardizing his or her job as well as encouraging criminal suspicion. Because the interrogators had the power to initiate criminal charges and to terminate the defendant's job, this situation involved coercion greater than the more common situation involving a suspect approached on the street by a police officer. *See e.g., United States v. Booth,* 669 F.2d 1231, 1236 (9th Cir.1981).

Although the surroundings of the mechanical room may not have been as coercive as a police station interrogation room, they certainly were not entirely neutral. The defendant was taken from her work station and placed in a closed room. One inspector sat between her and the exit. The entire situation was approved by her supervisor in cooperation with the inspectors. When as here, the defendant is segregated from outside influences and placed in an environment controlled by the interrogators, the forces of coercion work at their greatest. Under these circumstances the mechanical room provided the conditions recognized in *Miranda* that impair an individual's privilege against self-incrimination.

The defendant was not subjected to severe restraint on her physical freedom. She was not handcuffed nor locked in any type of detention facility. In addition, she was not faced with a large number of police officers. She was, however, placed in a closely confined area and confronted by two government agents. Because this was an environment in which the defendant had no control, the physical restraint used, and the show of authority made by the inspectors remain significant.

The character and duration of the interrogation also indicate a coercive environment. The defendant was almost immediately confronted with the accusation of the money shortage. After she denied involvement, the inspector began to talk through all the possible methods of embezzlement, knowing he would eventually hit home with her. When the inspector finally reached a topic that made the defendant uneasy, he picked up on the subtleties of her reaction and continued to pursue that line of questioning until she confessed. In soliciting the written statement, the inspector's suggestion of expressing remorse subtly implied that the defendant might expect lenient treatment in exchange for her confession. These subtle interrogation techniques are of the type specifically addressed by the Supreme Court in *Miranda* as inherently coercive.

The court finds that a reasonable person in defendant Steele's position would not have felt free to leave, that the surroundings, the duration of the questioning and the interrogation techniques indicate that the confession was obtained in a coercive environment. The court therefore concludes that the defendant was subjected to custodial interrogation and should have received *Miranda* warnings. Because she was not advised of her constitutional rights, her confession cannot be considered voluntary and is not admissible evidence. *Miranda*, 384 U.S. at 476, 86 S.Ct. at 1629.

## CONCLUSION

Because the defendant's oral and written confessions to the postal inspectors were made involuntarily, the defendant's Motion to Suppress is GRANTED.