NOT DESIGNATED FOR PUBLICATION

No. 114,940

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

MARLA J. CRIQUI,
*Appellee.*

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed December 9, 2016. Reversed and remanded with directions.

*Thomas R. Stanton*, deputy district attorney, *Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Sam S. Kepfield*, of Hutchinson, for appellee.

Before HILL, P.J., BUSER and LEBEN, JJ.

LEBEN, J.: Investigative agents at the Hutchinson Correctional Facility received anonymous letters that Marla Criqui, a contract employee, had engaged in a sexual relationship with an inmate. At the request of the agents, Criqui came to the office—located within the prison—for questioning. After the agents falsely suggested they had video footage of the area where Criqui worked, she admitted to having had sexual intercourse with an inmate. The State charged Criqui with one count of unlawful sexual relations.

Criqui sought to have her statements to police suppressed. The district court granted Criqui's motion to suppress based on violation of the well-known rule in *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), which prevents police from interrogating suspects in custody unless the police give several warnings. The State has appealed, arguing that Criqui was not in custody for *Miranda* purposes.

Courts look at a number of factors to determine whether a person was in custody and should have been given *Miranda* warnings on the right to an attorney and right to remain silent. As we will explain, we have concluded that a review of those factors leads to the conclusion that Criqui wasn't in custody and, therefore, didn't need to be given the *Miranda* warnings. Accordingly, the district court erred when it suppressed her statements based on *Miranda*.

Criqui separately sought to suppress her statements on the basis that they weren't voluntary. She contends that officers lied to her about the existence of video surveillance and told her she was in danger from inmates, leading her to feel coerced into making statements to the officers. We must analyze a separate set of factors to determine whether Criqui's statements were voluntary, and the district court did not rule or make clear factual findings on that issue. Because there are potential factual disputes related to the voluntariness of Criqui's statements—and the trial court, not an appellate court, must make such findings—we return that issue to the district court.

FACTUAL AND PROCEDURAL BACKGROUND

Marla Criqui worked at the Hutchinson Correctional Facility for 6 years. She was an employee of a food-service company that had a contract with the Kansas Department of Corrections to provide meals at the prison.

2

Sometime around June 2012, the Intelligence & Investigation office at the prison received anonymous letters accusing Criqui of having a sexual relationship with an inmate. When investigating allegations of misconduct, agents in that office typically interview both the person accused of the misconduct and the inmate allegedly involved. Agents usually conduct interviews of employees in the Intelligence & Investigation office in the prison.

On June 15, 2012, Criqui received a call while at work instructing her to go to the Intelligence & Investigation office at the prison's Central Unit. She was not told she was free to refuse that request. She drove to the Central Unit and passed through security to get to the Intelligence & Investigation office, located on the second floor.

Agents John Marcus and Mark Mora conducted the interview in a conference room. The doors were closed but not locked. The agents were not armed. Criqui was not handcuffed or physically restrained. Both agents said Criqui was interviewed as a suspect, but Mora testified that he never told Criqui that she was free to leave or that she could stop the questioning. Neither agent read Criqui her *Miranda* rights before interviewing her.

Marcus said the interview took about 10 minutes, while Mora estimated it was between 10 and 20 minutes. Criqui estimated that it took 1 hour. The district court did not make a factual finding about the interview's duration.

According to the agents, at the beginning of the interview, Marcus told Criqui that they had been videotaping the area where she worked. The agents also placed DVDs on the table "as a prop" to give Criqui the impression that they had recordings. But this was not true: they had not been recording the area and had no videos. Marcus acknowledged that this had been a ruse to get Criqui to speak and testified that such deception

3

sometimes "speeds up the process." Marcus testified that he never specifically said that they had footage of Criqui or that they had observed her doing anything.

According to Criqui, the agents told her that they had received reports of a relationship between her and an inmate. Criqui claimed that the agents had then "[thrown] a CD down on the table and said it was all recorded" and told her they had all the evidence they needed to have her removed from the building. She also testified that the agents had warned her that if other inmates knew she had had sex with another inmate, she would be in danger of them "get[ting] to [her]." Criqui testified that she knew and understood that once an employee is compromised, he or she is in danger of being taken advantage of by other inmates.

In response to the agents' statements, Criqui admitted to having had sexual intercourse with an inmate. She was then escorted out of the facility by one of the agents. The agents took her keys to the facility, her radio, and her work documents. She was allowed to keep her identification card but was barred from reentering the prison.

More than 2 years later, in December 2014, the State charged Criqui with one count of unlawful sexual relations for having sex with an inmate as a prison employee. See K.S.A. 2015 Supp. 21-5512(a)(1). Criqui filed a motion to suppress the statements she had made to the agents so that they could not be used as evidence against her at trial, arguing both that her confession was coerced and that, under *Miranda*, she should have been advised of her constitutional rights because she was in custody when she was interviewed. The district court heard testimony from the agents and Criqui, after which it suppressed evidence of Criqui's confession, concluding that she had been in custody and had not been properly advised of her *Miranda* rights. Apparently because it found Criqui's *Miranda* argument valid, the district court did not address whether her confession had been involuntary.

4

The State has appealed to our court. See K.S.A. 2015 Supp. 22-3603 (permitting the State to appeal from district court's order suppressing a confession or admission).

ANALYSIS

The district court concluded Criqui was in custody and suppressed her statements because the agents had failed to give the *Miranda* warnings before questioning her:

"The statements obtained from defendant were a product of custodial interrogation. Defendant was interviewed as a suspect in a crime. Defendant was on the job at the time of the requested interview. She would have had no reason to believe she could refuse the request to report to [the Intelligence & Investigation office]. While the officials requesting the interview were not her technical employers[,] they represented the entity with which her employer contracted. Defendant was not advised of her rights under Miranda. Defendant was not told she was free to leave at any time. The interviewing officials claimed to have evidence they in fact did not have. Defendant was warned that she was in danger of harm from other inmates. The whole truth was that as soon as officials extracted the admissions they sought, defendant would be escorted off the premises and removed from potential danger. The impact of the interview was immediate. Defendant was escorted from the premises, relieved of her job related tools and terminated from her employment.

"Reviewing all of the circumstances leads to the conclusion this was not an investigatory interview. On the contrary[,] it was an interview to extract a confession from defendant. At least one of the interviewing officers should have perceived the difference and laid the groundwork of warning defendant of her rights before proceeding."

A district court's ruling on a motion to suppress a confession involves questions of both fact and law. *State v. Garcia*, 297 Kan. 182, 186, 301 P.3d 658 (2013). On appeal, we review the district court's factual findings to be sure they were supported by substantial evidence, but we must determine the proper legal conclusions to be drawn

5

from those facts independently, with no required deference to the district court's conclusions. *State v. Dern*, 303 Kan. 384, 392, 362 P.3d 566 (2015). Substantial evidence means legal and relevant evidence that a reasonable person would find adequate to support a conclusion. *State v. May*, 293 Kan. 858, 862, 269 P.3d 1260 (2012); *State v. Walker*, 283 Kan. 587, 594-95, 153 P.3d 1257 (2007). Appellate courts do not reweigh evidence, assess the credibility of witnesses, or resolve conflicts in the evidence. *Dern*, 303 Kan. at 392.

The district court suppressed Criqui's statement based on violation of the well-known *Miranda* rule, which requires police to give several warnings before interrogating suspects in custody. These warnings are necessary to satisfy the requirements of the Fifth Amendment to the United States Constitution, which provides the right to remain silent about one's own possible criminal wrongdoing. See *State v. Morton*, 286 Kan. 632, 639, 186 P.3d 785 (2008). The goals of the warnings are to reinforce the Fifth Amendment right and to reduce the risk of a coerced confession or statement. See *Chavez v. Martinez*, 538 U.S. 760, 790, 123 S. Ct. 1994, 155 L. Ed. 2d 984 (2003) (Kennedy, J., concurring in part and dissenting in part); *New York v. Quarles*, 467 U.S. 649, 654, 104 S. Ct. 2626, 81 L. Ed. 2d 550 (1984). *Miranda* requires the person be warned "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda*, 384 U.S. at 444. If police fail to give the *Miranda* warnings before interrogating a person who is in police custody, statements the person made usually cannot be admitted as evidence in court. *Missouri v. Seibert*, 542 U.S. 600, 608, 124 S. Ct. 2601, 159 L. Ed. 2d 643 (2004); *Morton*, 286 Kan. at 639.

But the rule in *Miranda* only applies when a person is (1) in custody and (2) subject to interrogation. *State v. Warrior*, 294 Kan. 484, 496, 277 P.3d 1111 (2012). A custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action

6

in any significant way." *Miranda*, 384 U.S. at 444; accord *State v. Jones*, 283 Kan. 186, 192-93, 151 P.3d 22 (2007), *disapproved on other grounds by State v. Nelson*, 291 Kan. 475, 243 P.3d 343 (2010). The parties do not dispute that Criqui was interrogated. See *Rhode Island v. Innis*, 446 U.S. 291, 301-02, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980) (interrogation occurs when police officers use words or actions "that they *should have known* were reasonably likely to elicit an incriminating response"). The central question here is whether Criqui was in "custody" when she was questioned by agents at the Intelligence & Investigation office. If Criqui was not in custody, then the agents did not need to give her *Miranda* warnings; the warnings are not required for investigatory interviews, which "occur[] as a routine part of the fact-finding process before the investigation reaches the accusatory stage." *State v. Lewis*, 299 Kan. 828, 834-35, 326 P.3d 387 (2014). Whether a person was in custody for *Miranda* purposes is a legal question, which this court reviews independently. See *Jones*, 283 Kan. at 192.

It can be difficult to harmonize all the cases in this area, but they have established two essential questions courts should ask to determine whether someone is in custody under *Miranda*. First, what were the circumstances surrounding the interrogation? Second, under those circumstances, would a reasonable person have felt that he or she could end the investigation and leave? *Yarborough v. Alvarado*, 541 U.S. 652, 663, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004) (citing *Thompson v. Keohane*, 516 U.S. 99, 112, 116 S. Ct. 457, 133 L. Ed. 2d 383 [1995]); see *Howes v. Fields*, 565 U.S. ___, 132 S. Ct. 1181, 1189, 182 L. Ed. 2d 17 (2012); *Lewis*, 299 Kan. at 835. The "'ultimate inquiry'" is whether there was "'a "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest.'" *Thompson*, 516 U.S. at 112 (quoting *California v. Beheler*, 463 U.S. 1121, 1125, 103 S. Ct. 3517, 77 L. Ed. 2d 1275 [1983]). Courts also ask whether the relevant environment presents the same inherently coercive environment as a police station. *Howes*, 132 S. Ct. at 1189-90. The determination of custody depends on the objective circumstances of the interrogation, not the personal, subjective views of

the officers or the person being questioned. *Stansbury v. California*, 511 U.S. 318, 323, 114 S. Ct. 1526, 128 L. Ed. 2d 293 (1994).

The Kansas Supreme Court has also identified eight nonexclusive factors a court should consider to determine whether an interrogation was custodial: (1) the time and place of the interrogation; (2) the length of the interrogation; (3) the number of officers present; (4) the conduct of the officers and the person subject to interrogation; (5) the presence of actual physical restraint or its functional equivalent, such as drawn firearms or a stationed guard; (6) whether the person was being questioned as a suspect or as a witness; (7) whether the person arrived voluntarily at the site of interrogation; and (8) whether the person left freely, was detained, or was arrested after the interrogation. *State v. Bridges*, 297 Kan. 989, 1008, 306 P.3d 244 (2013); see also *Howes*, 132 S. Ct. at 1189 (providing a similar list of factors: location and duration of questioning, statements made during the interview, the presence or absence of physical restraints, and the release of the interviewee at the end of the interview). No single factor outweighs another, nor are the factors equally weighted. Courts must analyze every case on its own particular facts. *Lewis*, 299 Kan. at 835.

On appeal, the State first contends that the district court misinterpreted the factors in this case when it concluded the questioning of Criqui was not an investigatory interview because it "was an interview to extract a confession." The State asserts that this reasoning would turn nearly every interview conducted by law enforcement into a custodial one that would require *Miranda* warnings.

When read alone, the portion of the district court's order about "extract[ing] a confession]" could be interpreted to require *Miranda* warnings whenever the purpose of an interrogation is to gain a confession. But *Miranda* warnings are only required when the person is both in custody and subject to interrogation; the officer's subjective intent to get a confession is not relevant to whether *Miranda* warnings are necessary. The State's

argument ignores the context the district court provided for its statement; the court's order sets out the proper standards for determining whether an interrogation was custodial and the factors that Kansas courts consider in making that determination. And the court based its conclusion on factors other than the agents' motivation behind questioning Criqui— particularly her status as an employee and the conduct of the agents. So while the State's initial objection to the district court's ruling is not well taken, we still must determine whether the court's findings were sufficient to support its legal conclusion that Criqui was in custody.

At least one factor decidedly weighs in favor of finding that Criqui was in custody during the interview. The agents admitted that Criqui was questioned as a suspect. But the fact that a suspect is the focus of an investigation, by itself, does not trigger the need for *Miranda* warnings. *Warrior*, 294 Kan. 484, Syl. ¶ 6.

Several other factors weigh in favor of determining that Criqui was not in custody. The interview was relatively brief—one agent said it took 10 minutes, the other 10 to 20 minutes. While Criqui testified that it took "[a]lmost an hour," even that would not be such a long period of time that the interview would become custodial, unless there were other indications that Criqui wasn't free to leave. *E.g.*, *State v. Deal*, 271 Kan. 483, 498-99, 23 P.3d 840 (2001) (defendant not in custody when interrogated for 3 hours at police station where other factors did not suggest he was detained), *overruled on other grounds by State v. Davis*, 283 Kan. 569, 158 P.3d 317 (2006); *State v. Jacques*, 270 Kan. 173, 186, 14 P.3d 409 (2000) (same; defendant interrogated for more than 2 hours at police station); *State v. Jones*, 246 Kan. 214, 218, 787 P.2d 726 (1990) (same; defendant interrogated for more than 1 hour at police station). The agents were not armed. Criqui was not in handcuffs or otherwise restrained. She drove herself to the interview. See *Lewis*, 299 Kan. at 836-37 (the fact that defendant drove himself to interview at army base's investigation office weighed in favor of finding interview noncustodial). After the interview, Criqui was escorted out but was not otherwise detained or arrested.

Two other factors—the place of the interview and the conduct of the agents and Criqui—require more consideration.

In *Bridges*, 297 Kan. at 1009, the Kansas Supreme Court said "[a] neutral location—as opposed to the police station—'weighs against a conclusion that an interview was custodial'" (quoting *Warrior*, 294 Kan. at 497). In general, being interviewed at one's place of work is less likely to be considered custodial. See, *e.g.*, *United States v. Dockery*, 736 F.2d 1232, 1234 (8th Cir. 1984) (defendant questioned by FBI agents in vacant office in bank building where she worked); *People v. Snow*, 39 Ill. App. 3d 887, 892-94, 350 N.E.2d 875 (1976) (listing cases that held *Miranda* inapplicable to interrogations conducted at an individual's place of work). In *Lewis*, the Kansas Supreme Court noted that the defendant, an active military employee, was questioned by detectives in an interview room of the army base's investigative office and stated that he was essentially questioned in a police station. 299 Kan. at 832-33, 837. Here, Criqui was questioned in an unlocked conference room near the investigative offices of the prison where she worked. The conference room was a more neutral location than the interview room in *Lewis*. See *Morton*, 286 Kan. at 642 (defendant was not in custody when she came to police station voluntarily, was questioned in break room, and was told she was free to leave at any time). We recognize, of course, that the prison itself is a secured, locked-down facility; she would have had to get permission to move through various locked areas to leave the building. Even so, this was her normal workplace, and one would expect any interview about her work-related conduct to take place there. Ultimately, this factor weighs in favor of finding the interview was noncustodial.

The conduct of the agents does not clearly weigh in favor of or against concluding the interview was custodial. The district court found it significant that "[t]he interviewing officials claimed to have evidence they in fact did not have." But while that may be relevant in determining whether her statements were voluntary, see *State v. Swanigan*,

10

279 Kan. 18, 22-25, 106 P.3d 39 (2005) (use of false statement may impact voluntariness inquiry),whether the agents were deceptive about evidence is not relevant to whether the defendant was in custody for *Miranda* purposes. See *Oregon v. Mathiason*, 429 U.S. 492, 495-96, 97 S. Ct. 711, 50 L. Ed. 2d 714 (1977) (officer's false statement about finding defendant's fingerprints at the scene was not relevant to custody inquiry); *Morton*, 286 Kan. at 645-46 (officer's deceptive or misleading statement about whether defendant needed a lawyer present was not relevant to custody inquiry).

The district court also noted that the agents never told Criqui that she was free to leave at any time or that she could refuse to answer their questions, which weighs in favor of concluding she was in custody. See *Howes*, 132 S. Ct. at 1193 (fact that police told incarcerated suspect that he was free to return to his cell and end interview was "[m]ost important" consideration in making custody determination); *Jones*, 283 Kan. at 200. But just because a person was not informed he or she was free to leave does not mean he or she was in custody. See *Deal*, 271 Kan. at 498-99 (defendant not in custody when he willingly followed officers to police department, was interrogated for 3 hours, was never told he was free to leave, was interviewed in locked room, but was allowed to leave freely after questioning). The district court also noted that the agents warned Criqui she was in danger of harm from other inmates. But the agents' warning in the context of this case does not constitute a threat: Criqui acknowledged that compromised prison employees were at risk for harm by inmates. See *Warrior*, 294 Kan. at 498.

The district court also considered Criqui's status as a contract employee. It found this was significant because the investigating office represented the prison with which her employer contracted, and given her position as an employee, "[s]he would have had no reason to believe she could refuse the request to report" to the office for questioning and was never told that she could leave at any time. To consider whether this tips the balance toward finding Criqui was in custody, we turn to caselaw involving investigative interviews of an employee by the employer.

11

To be sure, a reasonable person employed by a government entity might be apprehensive about losing his or her position before determining that he or she could refuse to answer questions or was free to leave while being questioned by investigative agents of the governmental employer. *People v. Lawson*, 108 Misc. 2d 829, 838-39, 438 N.Y.S.2d 908 (1981); see also *United States v. Steele*, 648 F. Supp. 1375, 1378 (N.D. Ind. 1986) ("[A] reasonable person would not feel free to rebuff the inspectors out of fear of jeopardizing his or her job as well as encouraging criminal suspicion."). But the central question is whether the person's freedom of movement was restricted by law-enforcement agents in "any significant way" to a "degree associated with a formal arrest." *Thompson*, 516 U.S. at 112; *Miranda*, 384 U.S. at 444; see also *Dockery*, 736 F.2d at 1234 (employee's freedom to move at work is generally restricted by the employee's voluntary obligation to his or her employer and not by the actions of law enforcement).

Several courts have concluded that an employer's order to report for questioning, absent other coercive elements, does not constitute the type of restraint associated with a formal arrest. *United States v. Muegge*, 225 F.3d 1267, 1270-71 (11th Cir. 2000) (civilian employee was not in custody when ordered to go to special investigative office for questioning at military base); *United States v. Leese*, 176 F.3d 740, 743-45 (3d Cir. 1999) (postal employee not in custody when supervisor summoned her to interview with inspectors while she was on duty); *Finch v. State*, 518 So. 2d 864, 870-71 (Ala. Crim. App. 1987) (defendant voluntarily reported to interview with city officials at her supervisor's request). Thus, the fact that Criqui was an employee summoned to an interview did not mean that she was in custody for *Miranda* purposes, absent other coercive elements.

Taken altogether, we conclude that Criqui was not in custody for *Miranda* purposes. As we have discussed, the agents' subjective goal to get Criqui to confess and their use of deception were not relevant to whether she was in custody. Criqui arrived at

12

the interview voluntarily at the request of the agents and was not further detained or arrested after the interview. The interview took place in an unlocked conference room and was relatively brief, lasting no more than an hour. Although the agents did not inform Criqui that she was free to go, they also did not restrain her in any way. There's no indication that the agents threatened Criqui, even though they did advise her she was in danger of harm from inmates who knew of the improper conduct. Ultimately, Criqui's freedom of movement was not restrained by law enforcement to the degree associated with a formal arrest; based on existing caselaw, a reasonable person would have felt free to end the interview and leave. The district court therefore erred in concluding Criqui was in custody and in suppressing her statements based on a failure to give *Miranda* warnings.

As we noted at the start of this opinion, Criqui made two arguments in her motion to suppress her statements. In addition to the claimed *Miranda* violation, a claim we have rejected, she also argued that her statements should be suppressed because they were not voluntary. The State argues in its brief that the district court erred in determining Criqui's confession was involuntary and not a product of her free and independent will. But the district court's ruling never reached the voluntariness issue. The district court accurately recited the law regarding voluntariness, including the various factors that courts consider to determine whether a confession was voluntary. See *State v. Randolph*, 297 Kan. 320, 326, 301 P.3d 300 (2013) (discussing factors of voluntariness). But after the district court concluded that Criqui's statements were made during a custodial interrogation, it did not proceed with the separate analysis required to determine whether they were voluntary.

Even when a court has concluded a defendant was not in custody and *Miranda* warnings were not required, a defendant's incriminating statement may still be inadmissible as evidence if the statement was not voluntary. *Morton*, 286 Kan. 632, Syl. ¶ 6. We conclude that the district court, rather than our court, should be the one to address this issue because it may make additional factual findings and consider subjective factors

13

in analyzing voluntariness. See *State v. Espinobarros*, No. 111,217, 2014 WL 7653864, at *6-7 (Kan. App. 2014) (unpublished opinion) (remanding for further proceedings when district court did not reach voluntariness issue after concluding interview was custodial). We will remand the case to the district court for its consideration of Criqui's motion to suppress her statements on the ground that they were not voluntary.

The district court's judgment is reversed, and the case is remanded to the district court for further proceedings consistent with this opinion.